# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1568-22

S.L.,

    Plaintiff-Respondent,

v.

T.B.,

    Defendant-Appellant.

_____

> Submitted October 22, 2024 – Decided January 28, 2025
>
> Before Judges Susswein, Perez Friscia and Bergman.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1045-20.
>
> Westerberg Law, LLC, attorneys for appellant (Jill S. Westerberg, on the briefs).
>
> S.L., respondent pro se.

PER CURIAM

In this post-judgment matrimonial matter, defendant T.B.[1] appeals from the December 13, 2022 Family Part final judgment awarding equitable distribution, custody, and parenting time. The judge designated plaintiff, S.L., as the parent of primary residence with the parties having equal parenting time. The judge also divided the marital assets, ordered the marital home sold and the proceeds split, and ordered an existing mutual fund for their daughter's benefit—which was titled to defendant's mother—be transferred to plaintiff's name.

After carefully reviewing the record in light of the parties' arguments and the governing legal principles, we reverse the judge's decision with respect to the mutual fund since the court had no authority to order a nonparty (the maternal grandmother) to transfer assets to plaintiff's name. In all other respects, we affirm the judge's seventy-four-page written opinion.

I.

We presume the parties are familiar with the history of this vexatious litigation and thus need only briefly summarize the pertinent facts to the issues raised on appeal. Plaintiff and defendant were married in 2009 and have two children together. Their daughter, G.L., was diagnosed with autism spectrum

---

[1] We use initials to identify the parties in accordance with R. 1:38-3(d).

disorder and learning disabilities and attends a special needs school. Their son, M.L., has struggled with school, especially since the COVID-19 pandemic.

In 2020, plaintiff filed for divorce, citing irreconcilable differences. Defendant alleges a history of verbal and physical abuse. Her application for a temporary restraining order (TRO) in 2013 was dismissed and the parties entered into civil restraints; a final restraining order was not issued. Plaintiff alleges defendant has engaged in erratic behavior, including name-calling, cursing in front of their children, and calling his employer in an attempt to have him fired.

Defendant has been represented by four attorneys. Her third attorney described defendant's concerning behavior, a complete breakdown of communications, and a threatening message he received from defendant's mother. Due to these issues, he requested to be relieved as counsel, even though they were in the middle of trial. When he made this application, his client suffered from a transient ischemic attack (TIA) and was absent from court for several days. When she was reached to participate electronically, she hung up on the court, prompting the attorneys and the judge to request multiple wellness checks.

Plaintiff's counsel also moved for the appointment of a guardian ad litem, which the judge granted. Defendant was ordered to undergo a capacity evaluation. Defendant "declined to cooperate" with the evaluation.

Throughout trial, plaintiff alleged defendant was withholding the children from him, denying him the court-ordered fifty-fifty parenting time. He was forced to file several motions in an attempt to enforce his parenting time. Defendant also called the Division of Child Protection and Permanency (DCPP) during the litigation and made allegations of child abuse against plaintiff. The resulting investigations found those allegations were "not established."

In December 2021, halfway through the trial, both parties were granted TROs against each other. The TROs were eventually resolved through civil restraints; no final restraining orders were granted. Defendant was ordered to obtain an anger management evaluation and a substance abuse evaluation.

At trial, the judge heard testimony from the parties, defendant's mother, and G.L.'s school psychologist, Dr. Shelley Rosenberg, who testified as a fact witness to G.L.'s disabilities and educational needs. When Rosenberg took the stand on July 30, 2021, Robert Forgash, an attorney for the school, accompanied her to ensure the psychologist-patient privilege was protected. Plaintiff's counsel had also preemptively filed a motion to bar any testimony that might

concern privileged communications between Rosenberg and G.L.  No expert testimony was offered.

Although the trial judge had originally decided to interview the parties' children, she reconsidered this decision and, on October 11, 2022, entered an order declining to interview the children, stating her reasons in the order.

Following an eleven-day trial that was adjourned multiple times over the course of more than a year, the trial judge issued the final judgment of divorce and decision on December 13, 2022.  This appeal followed.  Defendant contends the trial judge erred by:  (1) ordering the transfer of the mutual fund to plaintiff's name; (2) not considering DCPP reports when awarding equal parenting time; (3) relying on reports that were not disclosed to counsel; and (4) declining to allow Rosenberg to testify as an expert witness.  She also claims the judge was biased against her throughout the trial.

II.

We first address defendant's contention that the trial judge erred in awarding a mutual fund owned by a third party to plaintiff.  The judge found that defendant's mother started the mutual fund for G.L. and that plaintiff had been the sole contributor for seven years.  The judge ordered that the mutual fund be transferred to plaintiff's name "in trust for the benefit of [G.L.]" and

further ordered that any withdrawals from the funds must have the written consent of both parties.

In a divorce proceeding, a judge is authorized to "make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage or civil union." N.J.S.A. 2A:34-23(h). This equitable distribution reflects the "acknowledgement 'that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership.'" Smith v. Smith, 72 N.J. 350, 361 (1977) (quoting Rothman v. Rothman, 65 N.J. 219, 229 (1974)). Therefore, "[a]ssets acquired by the joint efforts of the parties while the shared enterprise continues, should be, on its termination, eligible for equitable distribution." Ibid. "The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004), aff'd in part, modified in part on other grounds, 183 N.J. 290 (2005) (citing Rothman, 65 N.J. at 228-29).

In determining an equitable distribution of property, a trial judge must identify what specific property is eligible for distribution, determine the property's value, and decide how distribution can be most equitably made.

6

Rothman, 65 N.J. at 232. "Generally, property qualifies for equitable distribution 'when it is "attributable to the expenditure of effort by either spouse" during marriage.'" Genovese v. Genovese, 392 N.J. Super. 215, 225 (App. Div. 2007) (quoting Pascale v. Pascale, 140 N.J. 583, 609 (1995)).

However, not all property is subject to equitable distribution, even when acquired during a marriage. The statute provides that an asset "legally or beneficially acquired during the marriage or civil union by either party by way of gift, devise, or intestate succession shall not be subject to equitable distribution, except that interspousal gifts or gifts between partners in a civil union couple shall be subject to equitable distribution." N.J.S.A. 2A:34-23(h). Income generated from exempt assets or original property that may be exchanged for an exempt asset are also considered "separate property of the particular spouse." Painter v. Painter, 65 N.J. 196, 214 (1974).

Furthermore, "[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which [they are] not designated as a party or to which [they have] not been made a party by service of process." Hansberry v. Lee, 311 U.S. 32, 40 (1940). Judgments do not normally bind nonparties to litigation, N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 629 (App. Div. 2012)

(citing In re Application of Mallon, 232 N.J. Super. 249, 254 n.2 (App. Div. 1989)), unless the nonparties' interest was represented by a party.  Ibid. (citing Morris Cnty. Fair Hous. Council v. Boonton Township, 197 N.J. Super. 359, 364 (Law Div. 1984), aff'd o.b., 209 N.J. 108 (App. Div. 1986)).

Here, the dispute involves a mutual fund that defendant's mother holds title to and only plaintiff contributed to.  Plaintiff testified that the account was funded with marital assets and neither party disputes the funds would have been subject to equitable distribution before they were transferred to the mutual fund.  However, once contributed to the mutual fund, plaintiff gave the money and control of it to defendant's mother.

Although defendant's mother appeared as a witness for defendant, her rights and interests were not represented, and she had no notice that her property rights might be affected by this matter.[2]  We thus conclude the mutual fund assets titled in her name were not subject to equitable distribution.  Relatedly, the trial judge did not have authority to order a nonparty to transfer assets to plaintiff's name.  We therefore reverse that portion of the final order and remand for further proceedings consistent with this portion of our opinion

---

[2] We note that plaintiff did not move for leave to amend his pleadings to include defendant's mother as a direct or third-party defendant at any time during the litigation.  See R. 4:9-1 and R. 5:4-2(e).

8

We turn next to defendant's contention that the trial judge erred when she ordered equal parenting time because: (1) the judge ignored evidence from DCPP and (2) did not appropriately weigh the factors for determining parenting time.

Defendant contends the trial judge committed plain error by "brush[ing] over" the DCPP reports. We are satisfied defendant's contentions with respect to the DCPP reports, which found her allegations against plaintiff were "not established,"[3] lack sufficient merit to warrant extensive discussion. See R. 2:11-3(e)(1)(E). The trial judge acknowledged that each party claims there is physical abuse by the other, but she found there was a lack of "any specific testimony as to any incidents occurring after" the equal parenting time was ordered and that neither child or parent was at risk for physical abuse. We find no abuse of discretion in the manner in which the trial judge considered the DCPP investigation reports in conjunction with the trial testimony.

---

[3] Regulations for DCPP require the agency's investigations to find an allegation is "substantiated," "established," "not established," or "unfounded." N.J.A.C. 3A:10-7.3(c). A finding of "not established" indicates "there is not a preponderance of the evidence that a child is an abused or neglected child . . . , but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3).

We thus turn our focus to defendant's argument the judge did not properly consider the parenting time factors spelled out in N.J.S.A. 9:2-4. Decisions concerning custody or parenting time rest within the trial judge's sound discretion. Abouzahr v. Matera-Abouzahr, 361 N.J. Super 135, 157 (App. Div. 2003). As such, orders concerning custody and parenting time are reviewed for an abuse of discretion. Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). Such "an abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

In custody cases, "the primary and overarching consideration is the best interest of the child." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (citing Fantony v. Fantony, 21 N.J. 525, 536 (1956)). The focus must be on "the safety, happiness, physical, mental and moral welfare of the child." Fantony, 21 N.J. at 536. Under the best-interests standard, the parents should be "on equal footing." Bisbing v. Bisbing, 230 N.J. 309, 334 (2017) (quoting Emma v. Evans, 215 N.J. 197, 221-22 (2013)).

When making custody determinations, courts must also "specifically place on the record the factors which justify any custody arrangement not agreed to by both parents." N.J.S.A. 9:2-4(f). The statute provides:

> [T]he court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.
>
> [N.J.S.A. 9:2-4.]

We note that in this case, neither party presented experts even though they were afforded the opportunity to do so. Both parties confirmed to the trial judge they had not retained a custody expert.

A-1568-22

In rendering her decision, the trial judge found plaintiff to be an overall credible witness but found that defendant was not as credible. Furthermore, contrary to defendant's assertion, the judge thoroughly and thoughtfully considered the factors used to determine custody under N.J.S.A. 9:2-4, detailing the evidence that supported her written findings.

For example, the judge determined that the parties were "not able to cooperate in matters relating to the children," mostly due to defendant's manipulation and withholding of parenting time. The judge also noted that, while both parents were willing to accept custody, defendant had displayed an "unwillingness to allow visitation" and had prevented plaintiff from seeing the children, causing plaintiff to file "many actions to enforce 50/50 parenting time." When the parties complied with the parenting time orders, the judge found their interactions with the children were "good."

The judge also noted the history of TRO applications and testimony from both parties regarding abuse, but she nevertheless concluded that "neither the safety of the children or either parent" were at risk with the equal parenting time schedule.

The judge found that M.L. desired to "have parenting time with both parents equally" while G.L. had expressed different desires at different times.

Further, the judge found that both parents met the children's needs, with plaintiff attending more of their children's school and after-school activities and defendant attending more of their doctors' visits. Both children have "quality education" in their current schools, but the judge noted defendant seemed more concerned with their education, especially M.L.'s school absences.

The judge considered the stability of the environment, finding that plaintiff "offers a stable home environment" but defendant "does not provide a stable environment," contrasting plaintiff's timeliness and willingness to drop off and pick up the children with defendant's unwillingness to adhere to the parenting schedule. Both parents live reasonably close to one another and spend quality time with the children. The judge found neither parent was "unfit" to have the children.

The judge also found that the parenting schedule would give plaintiff the flexibility necessary for his job and enable defendant to work during the week. The judge concluded that it was in the children's best interest to maintain an equal parenting time schedule, and that naming plaintiff as parent of primary residence would "ensure more 'consistency' in parenting time, as well as 'involvement' in the children's lives."

A-1568-22

In sum, the trial judge's analysis of the relevant factors was commendably thorough, and her findings are amply supported by the record.

IV.

Defendant contends the trial judge abused her discretion by denying defendant access to the reports that served as a basis for the judge reversing her decision to interview the parties' children. By denying defendant access to these reports, defendant argues, she was deprived of due process and the chance for a fair hearing. This problem was compounded, plaintiff argues, when the judge reversed her decision to interview the children based on these reports.

As we have noted, initially, the judge indicated she would conduct interviews and asked counsel to supply questions. The judge reconsidered that decision, noting that both parties had written to the court that interviewing the children would "cause pressure, stress, and produce a stressful situation to both children," and that counsel agreed that the court should not conduct interviews. Because a mental health professional previously interviewed the children and both parties had the opportunity to testify as to the children's preferences, the judge ultimately declined to interview the children. Neither party utilized the health professional's report nor retained an expert in this matter, so the judge

relied solely on the parents' testimony when she found that both children had expressed a desire to be with both parents.

In custody cases, the court has a "special responsibility to safeguard the interests of the child at the center of a custody dispute because the child cannot be presumed to be protected by the adversarial process." Kinsella, 150 N.J. at 317-18. One factor the court must consider in determining custody is "the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision." N.J.S.A. 9:2-4 (flush language). In deciding this factor, a "court may on its own motion or at the request of a litigant conduct an in camera interview with the child(ren)." R. 5:8-6.

In Mackowski, we noted the importance of listening to the child affected by its custody decisions:

> Too often, judges deciding issues in the Family Part must rely solely on the "voices" of the attorneys who prepare the competing affidavits and certifications on the pretense that the litigant is speaking. R. 5:8-6 [e]nsures that where custody is a "genuine and substantial" issue, the judge will not be insulated from seeing and hearing the subject of the dispute. The "voice" seen and heard will not be that of the lawyer or litigant but that of the child who is the subject of the dispute. The value of a properly conducted interview enabling the judge to see and hear the child first-hand outweighs the possibility of harm that may befall a child by being subjected to the interview process. On balance, it is not the interview that is ultimately

15

harmful, but the custody dispute between the parties that potentially wrecks havoc with the child.

[Mackowski v. Mackowski, 317 N.J. Super. 8, 14 (App. Div. 1998).]

Courts have further recognized that judges may be reluctant to subject children to the "emotional trauma" that they might "experience during the interview process," but also recognized that "Family Part judges have developed a special expertise in dealing with family and family-type matters." D.A. v. R.C., 438 N.J. Super. 431, 459-60 (App. Div. 2014) (citing Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). Even so, once a child is interviewed in a custody case, "nothing the judge or any other person can say or do will ever convince the child that he or she is not responsible for the ultimate decision that is made. This is a burden no child of any age, should ever carry." Mackowski, 317 N.J. Super. at 15 (Kestin, J.A.D., concurring).

After Mackowski, Rule 5:8-6 was amended, and the word "shall" was replaced with "may," leaving the decision to interview a child "to the sound discretion of the trial judge, which, as in all matters affecting children, must be guided by the best interest of the child." D.A., 438 N.J. Super. at 455-56. Should the court, in its discretion, decline to interview a child, "it shall place its reasons on the record." R. 5:8-6.

We are satisfied the judge in the matter before us complied with these substantive and procedural principles. The judge stressed that counsel for both parties recognized that an interview would cause stress to both children, especially to G.L., who has special needs. The children had already been subjected to this stress when DCPP, the Custody Neutral Assessment (CNA) evaluator, and the military interviewed them. Defendant also agreed that a mental health professional should conduct the interview rather than the court, since an interviewer more experienced with special needs would be "less stressful for both children."

The record clearly shows the judge thoughtfully exercised her discretion in reconsidering whether to interview the children, articulating her reasons not only in the October 3, 2022 order, but also in the December 13, 2022 trial decision. This amply satisfies R. 5:8-6's requirement to place the justifications on the record. In sum, we find no abuse of discretion warranting our intervention.

V.

Defendant next argues that the trial judge did not fulfill her role as a neutral adjudicator in this matter but instead acted as plaintiff's advocate. Specifically, defendant argues the judge showed bias against her by requiring

17

her return to court after she suffered a TIA, giving her only one day to recover, while allowing plaintiff a continuance for job training. Further, defendant argues, bias was shown when the judge granted a continuance to plaintiff based on plaintiff's counsel's vacation, but did not grant a continuance when defendant's counsel had conflicting court appearances. In addition, defendant alleges the judge retaliated against her by appointing a guardian ad litem and by requiring her to undergo a competency exam for writing a letter to another judge.

Defendant also claims plaintiff's counsel received no pressure in presenting his case whereas defendant's counsel, who had entered the case mid-trial, was not given adequate time to prepare and was pressured to finish quickly. These instances of bias, defendant contends, "fundamentally changed the course of the trial," and defendant therefore requests the matter be remanded to a different trial judge.

We are unpersuaded. Our review of the record shows that, contrary to defendant's claims, the trial judge was laudably patient with defendant throughout this protracted and hotly disputed litigation. We add the following comments.

"The conduct of a trial . . . is within the discretion of the trial court." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003)

(citing Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000)).  This discretion is not disturbed "unless there is a clear abuse of discretion which has deprived a party of a fair trial."  Ibid. (citing Daisy v. Keene Corp., 268 N.J. Super. 325, 334 (App. Div. 1993)).

A judge must conduct a trial in a fair and impartial manner without remarks that might prejudice a party.  Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 297-98 (App. Div. 1999) (citing Cestero v. Ferrara, 110 N.J. Super. 264, 265 (App. Div. 1970), aff'd 57 N.J. 497 (1971)).  The judge's obligations include "the exhibiting at all times of judicial demeanor, patience and understanding."  In re Albano, 75 N.J. 509, 514 (1978).

Applying these standards, we conclude defendant's complaints of unjust and unequal treatment by the judge are baseless.  We note defendant's own counsel, Michael Rothmel, stated on the record that his client had "taken actions that I think are repugnant that I disagree with," including hanging up on the court, driving with her children even when she claimed she was too ill to appear in court, violating a court order to appear via Zoom, and refusing to communicate with counsel.  These actions, as well as threats received from defendant's mother, prompted Rothmel, defendant's third attorney during this litigation, to move to be relieved as counsel.  Rothmel's paralegal also certified

that in her forty years of paralegal work, she had "never experienced conduct such as this from a client."

Relatedly, we reject defendant's contention that the appointment of a guardian ad litem was done in retaliation. Given defendant's behavior, it was eminently reasonable for the judge to appoint a guardian ad litem.

Finally, plaintiff's complaints that her new attorney had insufficient time to familiarize herself with the case is unfounded. Defendant did not retain an attorney until August, 31, 2022, over six months after Rothmel was relieved as counsel. After a delay of over a year between trial dates, the judge was reasonably reluctant to adjourn these dates further. And despite entering the case near the end of trial, defendant's replacement counsel advocated for her client zealously and competently.

In sum, the actions defendant claims as bias against her were in fact reasonable reactions to her own actions.

VI.

Finally, we turn to defendant contention the trial judge erred when she refused to allow Rosenberg to testify as an expert. The judge asked defense counsel if she was listed as an expert, to which counsel replied simply, "she was not." The judge reasoned that Rosenberg had not expressed any prior opinions

or produced a report, and plaintiff had no chance to conduct further discovery that might be needed for an expert witness, as opposed to as a fact witness. The judge thereupon decided that Rosenberg "is limited to testify with regard to the facts that she knows in her position," but could not provide an opinion, since she was not proposed as an expert witness and could not testify as to what G.L. had told her, since those statements were protected under the patient-psychologist privilege.

"Evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). Evidentiary decisions will be upheld "if they are supported by adequate, substantial and credible evidence on the record." Ibid. (quoting MacKinnon v. Mackinnon, 191 N.J. 240, 253-54 (2007)).

The psychologist-patient privilege protects "communications between and among a licensed practicing psychologist and individuals, couples, families or groups in the course of the practice of psychology." N.J.S.A. 45:15B-28; N.J.R.E. 505. The privilege "should be treated similarly to the lawyer-client

privilege." Runyon v. Smith, 322 N.J. Super. 236, 242 (App. Div. 1999), aff'd

o.b., 163 N.J. 439 (2000). As the psychologist-patient privilege is modeled after

the attorney-client privilege, New Jersey courts have applied the three-pronged

test to determine when the attorney-client privilege may be pierced to the

psychologist-patient privilege:

> (1) there must be a legitimate need for the evidence; (2)
> the evidence must be relevant and material to the issue
> before the court; and (3) by a fair preponderance of the
> evidence, the party must show that the information
> cannot be secured from any less intrusive source.
>
> [Kinsella 150 N.J. at 299 (citing In re Kozlov, 79 N.J.
> 232, 243-44 (1970)).]

Only in the rare instance where a court determines that information

gathered from other sources, including independent expert evaluations, is

inadequate that the veil of psychologist-patient privilege should be pierced, and

prior treatment records should be disclosed. Id. at 328.

Certain exceptions to this privilege apply, such as N.J.S.A. 9:6-8.10,

which requires "[a]ny person having reasonable cause to believe that a child has

been subjected to child abuse . . . shall report the same immediately to the

Division of Child Protection and Permanency . . . ." In the face of abuse or harm

to a child, the privilege "must yield to the specific mandate" to report. State v.

Snell, 314 N.J. Super. 331, 339 (App. Div. 1998) (citing N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 592 (1995)).

We are satisfied defendant fails to meet the first and third prong of the Kinsella test. If G.L. had indeed disclosed any instances of abuse to Rosenberg, as defense counsel implies, she would have been compelled to disclose such information to DCPP under N.J.S.A. 9:6-8.10. Because there is no evidence of any such disclosure, it is reasonable to infer that she had no such information. It would be unreasonable to break the psychiatrist-patient privilege on the mere assumption that Rosenberg neglected her duty to disclose child abuse.

There also was no showing that the evidence defendant sought was not available elsewhere. The parties could have called other expert witnesses or psychologists to provide this information, but neither availed themselves of that opportunity. Further, the CNA report, which neither party introduced as evidence, would have provided a more thorough account of the children's desires or preferences, since both children were interviewed. Rosenberg, had she been allowed to speak about her sessions with G.L., could not speak to M.L.'s preferences or desires, and her testimony would only be repetitive of other non-privileged testimony and evidence.

23

In sum, Rosenberg was called as a fact witness and provided the testimony of a fact witness. The trial judge did not err in precluding her from offering an expert opinion.

To the extent we have not specifically addressed them, any additional arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION