**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3283-23

AURORA TERMINALS
CORPORATION,

      Plaintiff-Respondent,

v.

G2G TRANSPORT, LLC, and
BEACON LOGISTICS, LLC,

      Defendants,

and

G2G TRANSPORT, LLC,

      Defendant/Third-
      Party Plaintiff,

v.

PRIME PROPERTY &
CASUALTY INSURANCE
INC.,

      Third-Party Defendant-
      Appellant.

_____

Argued February 12, 2025 – Decided March 7, 2025

Before Judges Susswein and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7723-21.

David M. Kupfer argued the cause for appellant (Kennedys CMK LLP, attorneys; David M. Kupfer, of counsel and on the briefs; James T. Byrnes, Daniel Algieri and Dylan Greenspan, on the briefs).

Albert I. Telsey argued the cause for respondent (Meyner and Landis LLP, attorneys; Albert I. Telsey, on the brief).

PER CURIAM

This matter involves an insurance coverage dispute arising from a motor vehicle accident that resulted in an oil spill. The central question on appeal is whether the insurance carrier, third-party-defendant Prime Property & Casualty Insurance, Inc. (Prime), is responsible for paying the remediation costs imposed on its insured, defendant G2G Transport, LLC (G2G). Prime appeals a February 23, 2024 Law Division order granting summary judgment in favor of plaintiff Aurora Terminal Corporation (Aurora) and a May 24, 2024 order denying Prime's motion for reconsideration. The trial court's grant of summary judgment against Prime was based on its prior summary judgment ruling in Aurora's favor against G2G. The court had found that G2G was liable under the New Jersey

Spill Compensation and Control Act (the Spill Act or Act), N.J.S.A. 58:10-23.11 to -23.24. The specific provision in the policy that the trial court relied on in granting summary judgment against Prime—known as a Form MCS-90, Endorsement for Motor Carrier Policies of Insurance for Public Liability under Section 29 and 30 of the Motor Carrier Act of 1980 (MCS-90 endorsement)—requires a finding that the insured was negligent, not just liable under the Spill Act.

After reviewing the record in light of the legal principles governing summary judgment, we conclude the trial court did not make an adequate finding that the spill was caused by G2G's negligence. We are therefore constrained to vacate the order and remand for the trial court to determine, applying the summary judgment standard, whether G2G was negligent with respect to the accident and resulting oil spill as to trigger policy coverage under the MSC-90 endorsement. In view of the remand, we need only briefly address Prime's other contentions, which either lack merit or are rendered moot pending resolution of the remand proceedings. We leave to the trial court's discretion whether to allow additional discovery on the question of G2G's negligence.

# I.

We discern the following facts and procedural history from the record. In October 2020, Prime issued a commercial automobile liability insurance policy to G2G. The policy specifically excludes coverage for "Any Claim related to, caused by, or arising from Hazardous Materials." This section provides:

> This exclusion applies to any Hazardous Materials arising out of the actual, alleged, or threatened spilling, discharge, dispersal, seepage, migration, release or escape of Hazardous Materials, including without limitation:
>
> a. The handling, transportation, transfer, storage, disposal, processing, treatment, or releasing or exposure to Hazardous Materials.
>
> b. Any loss, Claim, cost, or expense arising out of any:
>
> (1) Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any [i]nsured or others test for, monitor, clean up, remove, contain, treat, or neutralize, or in any way respond to, or assess the effects of Hazardous Materials; or
>
> (2) Claim or Suit by or on behalf of a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, or neutralizing, or in any way responding to, or assessing the effects of Hazardous Materials.
>
> Clean up costs incurred by or on behalf of any Insured for Hazardous Materials spills from any Covered Auto are not covered by this Policy.

A-3283-23

As required by law,[1] the policy also includes an MCS-90 endorsement, which states,

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles . . . regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency, or bankruptcy of the insured. . . . The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

On March 3, 2021, G2G requested that "pollution liability" coverage be added to the policy and that it "will be hauling [n]on [h]azardous oils." On March 8, Prime amended the policy to include pollution coverage with an added

---

[1] See 49 C.F.R. § 387.7.

General Change endorsement stating, "[t]he undersigned hereby represents, acknowledges, and agrees . . . [t]o add pollution liability coverage at the current policy limits for the [two] currently scheduled units for the remainder of the term[.]" The endorsement further explained that "[t]his [e]ndorsement changes the terms and conditions of the [p]olicy issued. . . . Subject to all of the terms and conditions of the [p]olicy, unless expressly changed hereby."

On June 1, 2021, a G2G employee was operating a commercial truck in a lot on Lister Avenue in Newark that was leased to Aurora and subleased to G2G. The truck had a trailer-mounted metal tank, known as an intermodal, which contained oil. As the driver maneuvered the truck out of its parking spot, an adjacent parked truck pierced a hole in the intermodal, which immediately started spilling oil. Nearby surveillance video captured the incident.

Prime and the New Jersey Department of Environmental Protection (NJDEP) were notified of the spill that day. The NJDEP Bureau of Emergency Response issued a Field Directive which stated that "[b]ased on an investigation, the [NJDEP] has determined that [G2G] is responsible for the discharge of these hazardous substances. [G2G] is liable for payment of administrative costs to the [NJDEP] in this matter." G2G was directed to recover and remediate the discharged "waste oil" on the Lister Avenue lot and in the nearby river, to

6

dispose of the oil at an off-site disposal facility, and to hire a Licensed Site Remedial Professional.

Aurora retained an environmental consulting firm, Engineering & Land Planning Associates, to investigate and remediate the spill. Eikon Planning and Design, LLC, another firm Aurora retained, later took over the remediation work.

On October 15, 2021, Aurora filed a complaint and order to show cause against G2G.[2] On October 27, the trial court granted the order and set a reply date of November 19 and a return date of November 30. G2G did not reply and, on November 30, the court entered a final judgment order by default against G2G.

On February 16, 2022, Prime filed a complaint in federal district court seeking a declaratory judgment against G2G,[3] asserting that Prime owes no coverage to G2G in the lawsuit. The complaint also listed Aurora as a defendant but did not assert any claims against it.

---

[2] Aurora filed an amended complaint adding Beacon Logistics, LLC (Beacon) as a defendant.

[3] Prime also included Beacon, an alleged G2G alter ego, and Devarshi Upadhyaya, a G2G principal, as defendants.

On May 17, 2022, G2G filed a motion to vacate the November 30 default judgment, which the trial court granted on July 15. On July 20, G2G filed an answer and a third-party complaint against Prime.[4] On August 17, Prime dismissed its federal complaint. Prime filed its answer to G2G's third-party complaint, a counterclaim against G2G, and a cross-claim against Aurora on November 4.[5] G2G then filed its answer to Prime's counterclaim on November 8.

On January 6, 2023, Aurora filed a motion for partial summary judgment on its claims against G2G. On January 13, G2G filed a motion to reopen discovery and redesignate the discovery track. However, a week later, G2G's counsel filed a motion to be relieved as counsel due to client non-cooperation and to withdraw G2G's January 13 motion, which the trial court granted on February 6.

On March 14, 2023, Prime sent a letter to the trial court regarding its intent to oppose Aurora's summary judgment motion against G2G, inquiring about

---

[4] G2G also filed a cross-claim against Beacon.

[5] Prime also filed a cross-claim against Beacon and a third-party complaint against Upadhyaya.

A-3283-23

whether the court had set a new return date for the motion. On April 5, Aurora also sent a letter to the court asking about its "unopposed" motion.

On April 6, 2023, the trial court granted Aurora's motion for summary judgment against G2G in the amount of $1,426,871.61—$475,623.87 in environmental response/cleanup costs, trebled pursuant to the Spill Act. On April 26, Prime filed a motion for reconsideration, arguing it had not been given sufficient time to oppose the motion. On June 22, Aurora moved for summary judgment against Prime. A hearing was held on July 31 solely for Prime's reconsideration motion, after which the trial court granted Prime's motion for reconsideration but "declined to vacate" its April 6 order.

On August 21, 2023, Prime filed a second motion for reconsideration of the April 6 order. Prime also filed opposition to Aurora's pending motion for summary judgment against Prime on September 12. After a hearing held on February 23, 2024, the trial court denied Prime's second reconsideration motion of the April 6 order and granted Aurora's summary judgment motion against Prime, setting the amount Prime owed at $750,000, the limit of its MCS-90 endorsement. On March 12, 2024, Prime filed a motion for reconsideration of the February 23 order, which the court denied after a hearing on May 24, 2024.

This appeal followed.[6]  Prime contends the trial court erred in granting summary judgment against it, raising numerous substantive and procedural errors.  Specifically Prime raises the following contentions for our consideration.

> POINT I
>
> THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT ON APRIL 6, 2023 AGAINST G2G IN FAVOR OF AURORA, AS WELL [AS] REFUSING TO REVERSE THAT ORDER.
>
> POINT II
>
> THE TRIAL JUDGE ERRED IN ENTERING SUMMARY JUDGMENT AGAINST PRIME UNDER THE MCS-90 ENDORSEMENT IN THE PRIME POLICY IN ITS ORDER OF FEBRUARY 23, 2024 AS WELL AS [] REFUSING TO LATER VACATE SUCH ORDER.
>
> POINT III
>
> THE TRIAL COURT ERRED IN ENTERING BOTH ORDERS FOR SUMMARY JUDGMENT (APRIL 6, 2023 AND FEBRUARY 23, 2024) AS "FINAL JUDGMENTS."

Prime raises the following additional contentions in its reply brief.

> POINT I
>
> GENUINE ISSUES OF MATERIAL FACT PRECLUDED SUMMARY JUDGMENT.

---

[6]  The trial court granted a stay of execution of the February 23 judgment.

A-3283-23

POINT II

PRIME WAS NEITHER CONFLICTED NOR PROHIBITED FROM CHALLENGING THE CLAIMS BROUGHT BY AURORA AGAINST G2G.

POINT III

AURORA IS NOT ENTILED TO RECOVER THE PORTION OF THE JUDGMENT AGAINST G2G ATTRIBUTABLE TO TREBLE DAMAGES UNDER THE MCS-90 ENDORSEMENT.

POINT IV

IT WAS ERROR FOR THE TRIAL COURT TO APPLY THE MCS-90 ENDORSEMENT WITHOUT FIRST ADJUDICATING COVERAGE.

POINT V

AURORA DID NOT ASSERT ANY CLAIM AGAINST PRIME.

POINT VI

THE TRIAL COURT NEVER CERTIFIED ANY JUDGMENT AS "FINAL."

II.

We focus on Prime's contention that the trial court erred in finding the MCS-90 endorsement makes it responsible for the spill remediation costs. Prime argues the MCS-90 endorsement only applies to liability for "negligence" and, here, the trial court only found G2G liable, not negligent. We agree.

11

The Spill Act provides that "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, <u>without regard to fault</u>, for all cleanup and removal costs no matter by whom incurred."  N.J.S.A. 58:10-23.11g(c)(1) (emphasis added).  But the central issue in this appeal is not whether G2G is liable, but rather whether the insurance policy requires Prime to pay the remediation costs that were imposed on its insured.

The MCS-90 endorsement is "attached to an insurance policy issued to a motor carrier and is proof that the motor carrier has met the financial requirements of the federal regulations for motor carriers."  <u>Rafanello v. Taylor-Esquivel</u>, 465 N.J. Super. 304, 310 n.3 (App. Div. 2020) (citing 49 U.S.C. § 13906).  Its overriding purpose is "to protect innocent, injured members of the public."  <u>QBE Ins. Co. v. P & F Container Servs., Inc.</u>, 362 N.J. Super. 445, 451 (App. Div. 2003).  The MCS-90 endorsement requires an insurer to cover "any final judgment recovered against the insured for public liability resulting from <u>negligence</u> in the operation, maintenance or use of motor vehicles."  49 C.F.R. § 387.15.

We agree that a Spill Act violation does not automatically establish negligence.  As we have noted, the Act imposes liability without regard to fault.

12

As a general proposition, moreover, a statutory violation constitutes negligence per se only when the statute specifically incorporates a common-law standard of care. See Eaton v. Eaton, 119 N.J. 628, 642-43 (1990). The Spill Act does not do that. Simply put, an entity can be liable under the Act even when it did not act negligently. It thus follows that a judicial finding of liability under the Act does not automatically constitute a finding of negligence.

We reiterate that the MCS-90 endorsement is not triggered unless the final judgment imposing liability is based on a finding of negligence. Aurora's initial complaint does allude to negligence. The case statement asserts "[the G2G driver] negligently scraped against a sharp object that cut through the [intermodal], which released the entire contents of waste oil onto the ground." Aurora's complaint refers to an email from G2G stating "[o]ne of our drivers . . . had an accident." However, negligence was not a cause of action. Rather, Aurora's complaint sought a determination that "G2G [was] liable, without regard to fault."

In its initial ruling, the trial court found that "G2G is liable under the Spill Act for the [i]ncident." The court did not mention negligence in its order or at the hearing for Aurora's summary judgment motion against G2G. In response to Prime's motions to reconsider summary judgment against G2G, the court only

briefly referred to negligence at the hearing, first erroneously stating "[t]he [Field Directive] states G2G was responsible and negligent" and later asserting:

> The [c]ourt's decision that[,] as a motor carrier, G2G had an insurance and [MCS-90] surety . . . required by the Motor Carrier Act of 1980, to pay for a final judg[]ment rendered against it for its negligent trucking operations. G2G satisfied its obligation by having Prime provide the G2G insurance with a surety by way of the recognized MCS-90 surety endorsement, in exchange for [] G2G and its principal providing an indemnification and personal guarantee to Prime.
>
> [(Emphasis added).]

While the trial court addressed other elements of the MCS-90 endorsement, it made no further reference to negligence and made no comments about fault, duty, breach, or causation. In its order granting summary judgment against Prime, the court stated: "the MSC-90 surety endorsement is triggered as a result of the April 6, 2023 Final Judgment entered in this matter against G2G."

We conclude the trial court in granting summary judgment against Prime did not make an essential finding required to trigger the MSC-90 endorsement. We offer no opinion on whether the accident was the result of G2G's negligence. We merely hold that summary judgment against G2G was not based on negligence, and thus that judgment did not establish that Prime was responsible

14

to pay for the remediation under the MSC-90 endorsement. We therefore remand for further proceedings consistent with this opinion.

In light of our ruling, we need only briefly address Prime's other contentions, including that the summary judgment order against G2G was not a final judgment for purposes of triggering the MSC-90 endorsement because "numerous claims against Aurora, and among G2G, Prime, Beacon, and Upadhyaya were unresolved." Rule 4:42-2(a) permits the trial court to enter a judgment without addressing all claims. We are satisfied that the partial summary judgment granted to Aurora against G2G is a "final judgment" within the meaning of the MSC-90 endorsement.

Nor are we persuaded by Prime's contention the trial court erred by granting Aurora's summary judgment motion at a time when G2G was unrepresented. That brings us to Prime's contention the trial court erred in managing discovery by designating the underlying action as a Track I case, instead of a Track IV case. Counsel for G2G filed a motion to change the track assignment, but counsel later withdrew from the case and withdrew the Track change motion.

By way of background, "[t]he right of a trial court to manage the orderly progression of cases before it has been recognized as inherent in its function."

15

Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 488-89 (App. Div. 2000). Rule 4:24-1(a) states discovery "shall be completed . . . counting from the date the first answer is filed or from [ninety] days after the first defendant is served, whichever occurs first: Track I--150 days; Track II--300 days; and Tracks III and IV . . . --450 days." "If a new party is joined, the scheduled discovery end date shall be extended for a [sixty]-day period, unless reduced or enlarged by the court for good cause shown." R. 4:24-1(b).

Further, to extend the time for discovery,

> The parties may consent to . . . an additional [sixty] days by stipulation filed with the court or by submission of a writing . . . sought prior to the expiration of the discovery period. If the parties do not agree or a longer extension is sought, a motion for relief shall be filed . . . . [I]f good cause is [] shown, the court shall enter an order extending discovery.
>
> [R. 4:24-1(c).]

In this case, Aurora filed the lawsuit on October 15, 2021. Prime was added to the lawsuit as a third-party defendant on July 20, 2022. Six months later, on January 6, 2023, Aurora filed its first motion for summary judgment against G2G, which the trial court granted three months later on April 6. During the nine months that Prime was a third-party defendant and before the court

16

granted summary judgment against G2G, Prime did not make any discovery requests or file a motion to extend discovery.

On June 22, 2023, Aurora moved for summary judgment against Prime and Prime filed opposition on September 12. On February 23, 2024, the trial court granted summary judgment against Prime. Again, during the nineteen months between the filing of the third-party complaint against Prime and the grant of summary judgment against it, Prime did not request to extend discovery.

On this record, we are not persuaded the discovery issues raised by Prime on appeal provide an independent basis for overturning the grant of summary judgment against it. The gravamen of Prime's present argument is that it was denied its day in court to defend its insured's interests in the suit Aurora brought against G2G. We need not decide on whether Prime sat on its rights with respect to the action against its insured. Prime will have its day in court in the remand proceedings. As previously noted, we leave it to the trial court's discretion to reopen discovery to address the critical question on remand, which is whether G2G's negligence caused the motor vehicle accident and ensuing spill, in which event the MSC-90 endorsement may be triggered. To assist the trial court on remand, we instruct the parties to provide it with their appellate submissions.

17

We set no time limit on when the remand proceedings must be completed, and we do not retain jurisdiction.

With one exception, to the extent we have not addressed Prime's remaining contentions, it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). Although the issue of damages is premature pending the outcome of the remand proceedings, we deem it prudent to briefly address Prime's contention the trial court erred by ordering Prime to pay $750,000 to Aurora, rather than the $475,623.87 in actual remediation costs. Prime argues both New Jersey law and the MCS-90 endorsement prohibit insurance coverage for any form of punitive or exemplary damages.

The trial court granted Aurora's motion for summary judgment against G2G in the amount of $1,426,871.61—$475,623.87 in environmental response/cleanup costs that the court then trebled under the Spill Act.[7] After granting Aurora's motion for summary judgment against Prime, the trial court ordered that Prime shall pay Aurora $750,000, which is the maximum amount under the MCS-90 endorsement.

---

[7] See N.J.S.A. 58:10-23.11f.1(3) (providing that a plaintiff may be granted an award of treble damages upon a finding by the court that: (a) "the [] defendant is a person who was named on or subject to a directive issued by the department, who failed or refused to comply with such a directive").

Insurance companies are generally unable to provide coverage for punitive damages. "New Jersey sides with those jurisdictions which proscribe coverage for punitive damage liability because such a result offends public policy and frustrates the purposes of punitive damage awards." Johnson & Johnson v. Aetna Cas. & Sur. Co., 285 N.J. Super. 575, 583 (App. Div. 1995). The Legislature, however, implicitly recognizes that "the insurance of punitive damages does not violate the public policy of this State" if expressly covered by the policy. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 245 (2008) (citing N.J.S.A. 17:30A-5 (prohibiting recovery of punitive damages "unless covered by the policy")).

In this instance, the policy's terms do not require Prime to cover the cost of trebled damages. Thus, should the trial court on remand grant summary judgment against Prime based on a summary judgment finding that G2G was negligent, thus triggering coverage under the MCS-90 endorsement, Prime would only be responsible under its policy for paying the actual environmental response/cleanup costs borne by Aurora.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division