# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1751-23

M.Y.,[1]

    Plaintiff-Respondent,

v.

S.K.,

    Defendant-Appellant.

_____

        Submitted April 29, 2025 – Decided May 13, 2025

        Before Judges Firko and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1161-24.

        The Tormey Law Firm, attorneys for appellant (Louis J. Keleher, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to identify the parties in accordance with <u>Rule</u> 1:38-3(d)(10).

Defendant S.K. appeals from a January 23, 2024 final restraining order (FRO) entered in favor of plaintiff M.Y., a former household member, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on harassment, N.J.S.A. 2C:33-4. Because the judge did not make the requisite findings under the harassment statute, did not make findings on jurisdiction, did not allow defendant to cross-examine plaintiff, did not apply the two-prong test in Silver v. Silver,[2] and did not conduct the trial in a fair and impartial manner, we reverse and remand for a new trial before a different judge.

## I.

In his domestic violence complaint, plaintiff alleged that defendant contacted him utilizing his ex-wife's cell phone on December 24, 2023 at 9:45 a.m. and stated, "I was trying to be nice to you, but if you send something like that again, I'm going to break your f****** arms." Plaintiff alleged defendant sent three additional emails to him that day stating, "you f***** up again," "you have not seen s*** yet and I promise you, you don't want to f*** with me. It's my move now," and "you are done, I'm not going to let you off the hook as easily as I did the last time, watch mother******, watch what happens this time bitch, you're f****** done." The last email defendant sent to plaintiff that day states,

_____

[2] 387 N.J. Super. 112, 125-27 (App. Div. 2006).

"[t]his round is going to be fun.  It's over for you."  As a result of defendant's emails, plaintiff claimed he was "in fear for his safety."

The complaint alleged the predicate acts of harassment and terroristic threats and that there are "multiple" domestic violence harassment reports on file with the police department regarding the parties.  In terms of jurisdiction, the box which states "was at any time a household member" was checked off.  Plaintiff sought and was granted a temporary restraining order (TRO), which ordered defendant to have no contact with plaintiff.

At the ensuing trial, which lasted approximately thirty-two minutes, both parties were self-represented.  They were the only two witnesses who testified.  Plaintiff waived an opening statement.  In lieu of an opening statement, defendant moved to dismiss the complaint, which was denied.  Defendant argued that during a previous motion regarding jurisdiction in a prior TRO proceeding before the same judge, defendant's former counsel did not present the motion properly, and the judge needed to "reconsider" his prior ruling.[3]

On the issue of jurisdiction, the judge ruled as follows:

> You won't listen to my instructions.  You refuse to and
> both of you have on numerous occasions in the past.  So
> this is going to be as fast as I could possibly make it.
> Your motion is denied.  This [c]ourt previously ruled

---

[3]  The transcript of the prior TRO proceeding is not contained in the record.

on the issue of jurisdiction and found that there was— it's not cohabitation, it's household members according to the case law. And I did hear testimony before. And I did make a ruling on jurisdiction. And that decision will not change. If you didn't like that decision, you should have appealed it. This is not the court—the court to appeal to. That's the Appellate Division.

The judge told the parties, "You agreed to jurisdiction the first time." Defendant responded that the parties never lived together, and thus, the judge should dismiss the complaint under the PDVA for lack of jurisdiction.

Plaintiff testified the date on the complaint incorrectly set forth the subject emails were sent on December 26, 2023. Plaintiff explained the emails were sent on December 24, 2023, and he filed his complaint on December 26, 2023. After confirming the date was wrong and correcting it on the record, the judge stated, "You two are two of the most troublesome litigants I've ever had in my courtroom. And I'm telling you now that I'm not going to tolerate it."

Plaintiff testified as to the allegations set forth in his complaint. During plaintiff's testimony, the judge told him, "Stop fumbling around with papers and testify. Do you want me to put you up in the witness stand?" Plaintiff responded "no." Plaintiff had printed copies of the subject emails, which were moved into evidence. Because plaintiff was "afraid" of defendant, he requested an FRO.

4

Following plaintiff's testimony, the judge gave defendant the following options: respond to plaintiff's allegations, present any evidence, remain silent, and ask questions of the court. The judge did not provide defendant with an opportunity to cross-examine plaintiff.

Defendant admitted that he sent plaintiff three emails in response to plaintiff's "incessant harassment and treatment of [his] step-daughter and [his] wife." Defendant testified about plaintiff's "promise to make our lives a living hell." Defendant stated he has "no criminal history" and "no violence" in his background. Defendant explained the emails are "basically ordinary domestic contretemps" because there has "never been any evidence of any physical threats." Defendant testified he "never heard of anybody threaten to break arms," and probably, a threat would more likely be to "break legs." Defendant stated plaintiff's allegations were therefore a "complete lie," and "he was trying to ruin our Christmas."

Defendant testified that in a March 3, 2023 email, plaintiff promised to make his life a "living hell" and is now "living up to his promise." Defendant moved a copy of plaintiff's email into evidence. Defendant attempted to remind the judge about plaintiff's "credibility at the last hearing," but the judge told

5

defendant "that's a summation." Plaintiff was not provided an opportunity to cross-examine defendant. The parties gave brief summations.

Following the parties' testimony and summations, the judge placed his decision on the record. The judge did not make a determination on the issue of jurisdiction under the PDVA. The judge found plaintiff proved the predicate act of harassment based on the "vile" nature of defendant's emails. The judge also found defendant's emails were "threatening in nature" and that "any normal person could be easily annoyed by these messages or alarmed."

The judge cited the elements of the harassment statute under N.J.S.A. 2C:33-4, which provides, in pertinent part that a person is guilty of harassment if, with purpose to harass another, [they]:

> a. Make[], or cause to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> b. Subject another to striking, kicking, shoving, or other offensive touching, or threaten to do so. . . .

The judge found harassment was proven based on plaintiff's credible testimony but made no specific factual findings and no finding of a purpose to harass. The judge also made no finding that an FRO was necessary to protect plaintiff from an immediate danger or to prevent further abuse. The judge

6

merely found that the "messages sent by . . . defendant were abusive in nature" even in the absence of any physical danger. The judge noted that the emails admitted into evidence by defendant were "useless" because they were sent "months earlier" than the time plaintiff alleged domestic violence.

The judge did not make any findings on the predicate act of terroristic threats. Instead, he stated "it need not be addressed and there [was] some question. Since [he] ha[d] the plaintiff's word versus . . . defendant's in terms of breaking arms."

On appeal, defendant argues the judge erred in entering an FRO and in finding defendant committed acts of domestic violence instead of domestic contretemps and failed to find a purpose to harass under N.J.S.A. 2C:33-4. Defendant contends the judge erred in denying defendant's motion to dismiss for lack of jurisdiction, not providing him the ability to cross-examine plaintiff, and erred in finding plaintiff satisfied the second <u>Silver</u> prong. Defendant also argues the judge should have recused himself because he developed a "noticeable bias and disdain" towards both parties.

II.

Our review of a trial court's decision to enter an FRO in a domestic violence matter is limited. <u>Peterson v. Peterson</u>, 374 N.J. Super. 116, 121 (App.

Div. 2005). "A reviewing court is bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

"Reversal is warranted only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts . . . ." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. "The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence," that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4, as conduct constituting domestic

violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1).

A finding of harassment requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; see Silver, 387 N.J. Super. at 124. Although a purpose to harass may, in some cases, be "inferred from the evidence," and may be informed by "common sense and experience," a finding by the court that the defendant acted with a purpose or intent to harass another is integral to a determination of harassment. State v. Hoffman, 149 N.J. 564, 577 (1997).

We note that purposeful conduct "is the highest form of mens rea contained in our penal code, and the most difficult to establish." State v. Duncan, 376 N.J. Super. 253, 262 (App. Div. 2005). Its establishment requires proof, in a case such as this, that it was the actor's "conscious object to engage in conduct of that nature or to cause [the intended] result." N.J.S.A. 2C:2-2(b)(1). A plaintiff's assertion that the conduct is harassing is not sufficient. J.D. v. M.D.F., 207 N.J. 458, 484 (2011). Further, a "victim's subjective reaction

alone will not suffice; there must be evidence of the improper purpose."  Id. at

487.

When deciding the issues of intent and effect, we are mindful of the fact

that

> harassment is the predicate offense that presents the
> greatest challenges to our courts as they strive to apply
> the underlying criminal statute that defines the offense
> to the realm of domestic discord.  Drawing the line
> between acts that constitute harassment for purposes of
> issuing a domestic violence restraining order and those
> that fall instead into the category of "ordinary domestic
> contretemps" presents our courts with a weighty
> responsibility and confounds our ability to fix clear
> rules of application.
>
> [Id. at 475 (citation omitted).]

"[T]he decision about whether a particular series of events rises to the level of

harassment or not is fact-sensitive."  Id. at 484.

If a predicate offense is proven, the judge must then assess "whether a

restraining order is necessary, upon an evaluation of the [factors] set forth in

N.J.S.A. 2C:25-29(a)(1) to -29(a)(7), to protect the victim from an immediate

danger or to prevent further abuse."  Id. at 475-76 (quoting Silver, 387 N.J.

Super. at 127). The factors which the court should consider include, but are not

limited to:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse.  If the court finds that one or more factors of coercive control are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion.  Coercive control may include, but shall not be limited to:

    (a) isolating the person from friends, relatives, transportation, medical care, or other source of support;

    (b) depriving the person of basic necessities;

A-1751-23

(c) monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;

(d) compelling the person by force, threat, or intimidation, including, but not limited to, threats based on actual or suspected immigration status;

(e) threatening to make or making baseless reports to the police, courts, the Division of Child Protection and Permanency (DCPP) within the Department of Children and Families, the Board of Social Services, Immigration and Customs Enforcement (ICE), or other parties;

(f) threatening to harm or kill the individual's relative or pet;

(g) threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order pursuant to current law including, but not limited to, an order issued pursuant to Title 9 of the Revised Statutes; or

(h) any other factors or circumstances that the court deems relevant or material.

[N.J.S.A. 2C:25-29(a).]

Although the court is not required to incorporate all of these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence

12

between the parties.'" Cesare, 154 N.J. at 401-02 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment, and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

The court must exercise care "to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017). The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente, 281 N.J. Super. at 250. Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)).

Here, the judge made no finding that defendant acted with the requisite purpose to harass. Accordingly, in the absence of this "integral" finding of a purpose to harass, Corrente, 281 N.J. Super. at 249, the judge's determination that defendant committed the predicate act of harassment cannot stand,

warranting reversal and remand for the requisite findings of fact and conclusions of law, see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5.2 on R. 5:7A (2025) ("A[n] [FRO] cannot be sustained when a court fails to articulate the applicable subsection of the harassment statute and to provide the legal and factual basis for finding a purpose to harass.").

The FRO must also be reversed because the judge did not find that a restraining order was necessary "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. As we explained in Silver, the finding of a predicate act satisfies only the first step in a two-step process. Id. at 126-27. Because "the Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order," plaintiff was obligated to prove and the judge was required to find that restraints were necessary to "protect the victim from an immediate danger or to prevent further abuse." Ibid.

Here, the judge made no such finding. Although the judge stated the subject emails sent by defendant were abusive in nature, he engaged in no principled analysis of why he found that to be the case and made no evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(7). Absent an

expressed holding, or other findings from which we might discern such an implicit determination, we must conclude that reversal and remand is warranted.

III.

Defendant next argues that the judge erred in not providing him the right to cross-examine plaintiff in violation of the Confrontation Clause contained in the Sixth Amendment. According to defendant, the judge gave him "options" after plaintiff testified but did not explicitly give defendant the right to cross-examine plaintiff. As a self-represented litigant, defendant claims he was unaware of his right to cross-examine plaintiff. Citing Olden v. Kentucky, defendant claims the Sixth Amendment right to be confronted with the witnesses against the accused included the right to conduct reasonable cross-examination. 488 U.S. 227 (1988). We agree.

In Peterson, we held that the issuance of a restraining order against defendant without allowing defendant to cross-examine witnesses—or present witnesses in his own defense—violated his right to due process. Id. at 124. We were "troubled by the informality of the proceedings" in that case and "the failure to afford defendant essential procedural safeguards including the right to cross-examine adverse witnesses." Ibid. In the absence of this critical safeguard, we conclude "the integrity of the fact-finding process" was

15

compromised because the judge was unable to "fully and fairly assess credibility."  Id. at 125 (citing Kentucky v. Stincer, 482 U.S. 730, 736 (1987)) (quotation and citation omitted).

Based on our analysis, we hold defendant's due process and Confrontation Clause rights were violated.  As we stated in N.B. v. S.K., although "trials in domestic violence matters are usually brief, loosely conducted affairs, our courts must be vigilant to ensure that parties' procedural due process rights are maintained."  435 N.J. Super. 298, 308 n.12 (App. Div. 2014).  The judge erred in not allowing cross-examination of plaintiff.

IV.

Defendant next argues the judge should have recused himself because he developed a noticeable bias and disdain towards both litigants.  Specifically, defendant contends the judge did not fulfill his role as a neutral adjudicator in this matter but instead, from the onset of the trial, was "fed up" with both parties. Defendant asserts the judge showed bias by telling the parties, "You two are two of the most troublesome litigants I've ever had in my courtroom," and "I'm not going to tolerate . . . don't say anything."  Defendant also contends bias was shown when the judge remarked, "See this is what I'm talking about.  It's like you guys don't have ears."  Defendant claims this is not the judge's first

16

experience with these parties because he mentioned at least two other prior TRO hearings.

Defendant also argues it was "nearly impossible" for the judge to separate one trial here from another. By way of example, defendant relies on the judge's statement during trial: "We are not going to talk about what happened at a prior hearing . . . we're talking about the evidence . . . here today. . . . That's what my decision has to be based upon." These instances of bias, defendant argues, resulted in the improper issuance of an FRO against him, and therefore, he requests the matter be remanded to a different judge.

"The conduct of a trial . . . is within the discretion of the trial court." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003) (citing Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000)). This discretion is not disturbed "unless there is a clear abuse of discretion which has deprived a party of a fair trial." Ibid. (citing Daisy v. Keene Corp., 268 N.J. Super. 325, 334 (App. Div. 1993)).

A judge must conduct a trial in a fair and impartial manner without remarks that might prejudice a party. Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 297-98 (App. Div. 1999) (citing Cestero v. Ferrara, 110 N.J. Super. 264, 273 (App. Div. 1970)). The judge's obligations include "the exhibiting at

17

all times of judicial demeanor, patience and understanding." In re Albano, 75 N.J. 509, 514 (1978).

Applying these standards, we conclude defendant's complaints of unjust treatment by the judge have merit. We note at the commencement of trial, the judge would not allow defendant to fully argue his jurisdiction motion. The judge stated, "You won't listen to my instructions. You refuse to and both of you on numerous occasions in the past . . . Your motion is denied." These statements, and our review of the record, convinces us that the judge had a palpable disdain for the parties resulting in an unfair trial.

As our Court has mandated, when "a reasonable, fully informed person" reviews rulings made by the trial judge, without any facts in the record to support them, they would "have doubts about the judge's impartiality." DeNike v. Cupo, 196 N.J. 502, 517 (2008). We conclude the judge's conduct resulted in an impartial trial warranting reversal and remand for a new trial before a different judge.

In sum, we vacate the FRO, reinstate the TRO, and reverse and remand for a different judge to: (1) make findings on jurisdiction under the PDVA; (2) make the requisite findings of fact and conclusions of law as to the predicate acts of harassment under N.J.S.A. 2C:33-4 and terroristic threats, N.J.S.A.

2C:12-3; and (3) determine whether an FRO is necessary under <u>Silver</u> and the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(7).

To the extent we have not addressed defendant's other arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1751-23